**Byron THOMPSON, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**Nos. 01–99–01381–CR to 01–99–01383–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 5, 2002.

Rehearing Overruled Feb. 14, 2003.

Charles Freeman, Houston, for Appellant.

Shirley Cornelius, Assistant District Attorney–Harris County, Houston, for Appellee.

Panel consists of Justices TAFT, ALCALA, and PRICE.*

## OPINION

TIM TAFT, Justice.

A jury found appellant, Byron Thompson, guilty of first-degree felony injury to a child,[1] third-degree felony injury to a child,[2] and second-degree felony aggravat-

---

\* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

1. *See* TEX. PENAL CODE ANN. § 22.04(a)(1), (e) (Vernon Supp.2002) (intentional or knowing serious bodily injury to a child). Appellate cause number 01–99–01381–CR; trial court

cause number 800503. The complainant was C.T., appellant's younger brother.

2. *See* TEX. PENAL CODE ANN. § 22.04(a)(3), (f) (Vernon Supp.2002) (intentional or knowing bodily injury to a child). Appellate cause number 01–99–01383–CR; trial court cause number 800504. The complainant was T.T., appellant's younger sister.

ed assault.[3] The jury assessed punishment at 40, two, and 15 years in prison and fines of $4,000, $2,000, and $4,000, respectively. We address whether the trial court erred in (1) overruling appellant's objections to the State's misstatement of the law during voir dire, (2) overruling appellant's challenges for cause, (3) refusing to allow appellant to repeat a question to three venire members, (4) denying appellant's motion to discharge the venire because of cumulative, "fundamental" error, and (5) including a good-conduct-time instruction in the two injury-to-a-child charges after having granted appellant's request to omit the same instruction from the aggravated-assault charge. We also consider whether appellant was harmed by the alleged lack of a constitutional good-conduct-time instruction for the aggravated-assault charge. We affirm.

### Facts

The three victims—appellant's sister, T.T., his brother, C.T., and his mother—testified against appellant.

Seventeen-year-old appellant was kicked out of his home for stealing his mother's car. On December 13, 1999, appellant returned home. He threatened his mother and his three siblings, nine-year-old C.T., 13–year–old T.T., and younger brother J.T. Appellant and his friends tried to set the house on fire that same day. The mother called the police three times, but eventually allowed appellant back home. The next morning, everything seemed normal again, and the mother left all four children at home while she went to work.

While the mother was gone, appellant attacked T.T., choking her. T.T. ran to a bathroom, but could not close the door before appellant knocked the door in and stabbed her hand with a knife. Appellant then squeezed T.T.'s head between his legs so tightly that she could hardly breathe and punched her in the face several times. Appellant told J.T. and C.T., who were watching, that he would kill them next. T.T. got away and locked herself in another bathroom. When she opened the door a few minutes later, appellant threw in a t-shirt that he had set on fire. The fire drew T.T. out of the bathroom, and appellant began choking her again. When appellant stopped choking T.T., she and J.T. ran to the bathroom and locked themselves in.

After T.T. and J.T. had hidden in the bathroom, appellant hit C.T. on the head "a lot" of times with a hammer, cut C.T.'s arm with the hammer's claw so deeply that his bone showed, and stabbed him in the chest "a lot" with a knife. C.T. ran away to the bathroom, and T.T. and J.T. let him in. Appellant set fire to another shirt with lighter fluid and pushed it into the bathroom. The children inside could hardly breathe and began choking, but appellant, who was laughing, prevented their coming out for air by holding the door. When appellant finally released the door, T.T. ran out, and appellant struck her on the head with the hammer.

Appellant then made his siblings sit in the living room without treating their wounds. While the children were sitting there, appellant grabbed C.T., squeezed his head and neck, and pulled his neck back until C.T. could not breathe. Appellant made the other children watch as he attacked C.T. After C.T. passed out, appellant made the others help him drag C.T.'s body to a bedroom. Once in the bedroom, appellant continued attacking C.T. by

---

**3.** *See* Tex. Penal Code Ann. § 22.02(a)(2), (b) (Vernon 1994). Appellate cause number 01–99–01382–CR; trial court cause number 800505. The complainant was appellant's mother.

stomping hard on C.T.'s head "a lot" of times. Appellant then left C.T. in the room, began listening to the radio, and declared, "You see? I don't care." Appellant returned once to C.T. to kick him again.

After finishing his attack on C.T., appellant told T.T. and J.T. to hold their mother down when she came home so that he could stab her. Appellant threatened to kill T.T. and J.T. if they did not help him. Appellant turned down the house lights in anticipation of his mother's return.

As their mother came through the door that night, T.T. ran past her and over to a neighbor's house for help. When their mother reached for the light switch, appellant grabbed her from behind, spun her around, climbed over her after she fell, and stabbed her seven times in the chest and face with a long kitchen knife, knocking out her tooth, piercing her mouth through, and slashing her tongue. Appellant called his mother "awful names" and said he was going to kill her. After appellant bent the knife blade, he beat his mother's face with his hands, blackened her eyes, and choked her. A neighbor came, and appellant ran outside. The neighbor stopped and held appellant.

Houston Police Department Officer Mark Medina came to the scene first. The officer saw appellant and another male standing in the front yard as he approached and found appellant's mother in the house. The mother told Officer Medina that appellant had caused her injuries. Officer Medina also found C.T. inside: C.T. was barely conscious, was breathing shallowly, and had a faint pulse. When the officer went outside again, he saw T.T., who appeared in shock, had a cut hand, and had blood dripping from the back of her head. Other officers arrived and arrested appellant.

There was blood in various places throughout the house. A kitchen-knife handle lay on the counter, with its blade on the floor nearby. Another bloody kitchen knife lay outside the door. One bathroom's door had been ripped off. Burned debris was in the other bathroom. A nearly empty charcoal-lighter can lay on the floor. A few days later, the police recovered from the garage a hammer with a bit of blood on it.

C.T. remained in intensive care for several days because of the resulting severe head trauma. T.T.'s head wound had to be stapled together.

Appellant took the stand in his defense. He did not deny attacking his family. Rather, he claimed that he (1) did not remember doing anything that he had been accused of doing the day before the attacks or hitting T.T. with the hammer, stabbing C.T. or his mother as many times as he did, or squeezing C.T.'s head between his legs; (2) did not kick in the bathroom door; (3) accidentally struck T.T.'s hand with the knife while they were playing; (4) became "frustrated" and lost his temper when C.T. panicked and started accusing appellant of trying to kill the others; (5) hit, kicked, and stabbed C.T. because of this frustration; (6) did not intend to kill his siblings or his mother or to hurt C.T.; (7) did not know what he was doing when he hurt C.T.; and (8) attacked his mother because "that was the only way out" of various family problems, including his mother's allegedly abusive behavior.

## Voir Dire

### A. Misstatement of Law During Voir Dire

In his first issue, appellant contends that the State misstated the law during voir dire by using a hypothetical, designed to determine whether members of the venire panel could consider the full punish-

ment range, that included a hypothetical witness's punishment recommendation. Appellant claims the misstatement could have led the jury to believe that punishment-recommendation evidence was admissible. Appellant further argues that the jury could then have inferred from the absence of such evidence during punishment that appellant did not present punishment-recommendation evidence because it was unfavorable to him. Appellant's issue challenges the trial court's overruling his objections to this hypothetical.

After explaining the minimum and maximum punishments for the first-degree felony offenses, the State asked whether the venire members could consider the full punishment range "from probation to life in prison." Some venire members indicated that they could not consider community supervision. Pursuing this line of questioning, the State gave a hypothetical that would likely implicate the minimum: a 13–year–old boy and his father, who is a good parent, but who one day gets angry at his son and loses control, punches his son in the mouth. The State continued:

> State: In my hypothetical, consider you had [a] dad [who] did this. He meant to hit him. He was mad, which wasn't a defense. The kid did sustain the injury but dad's been a good dad. *Mother admits I don't care if he gets probation.*
>
> Appellant: Objection. That is inadmissible. Punishment recommendations are inadmissible in court included in hypothetical. Inadmissible evidence.
>
> Court: Overruled.
>
> State: In this hypothetical situation, *once again the mother wants the dad to get probation.*
>
> Appellant: Again, objection. That's objection[able]. She's including a punishment recommendation [that is] prohibited—it is prohibited to give

punishment recommendations as part of [the] evidence in a case.

> Court: That's overruled.
>
> State: In any event, I throw out this hypothetical as a potential hypothetical of a case involving intentional injury to a child with serious bodily injury. That's just one of many that may be the type of case—may be the only case you would ever consider a probation for. But I throw that out because to be a fair and impartial juror you have to be able to keep an open mind and consider.

(Emphasis added.)

■■■ The law allows the parties to use hypotheticals during voir dire to ascertain prospective jurors' views. *Pineda v. State*, 2 S.W.3d 1, 10 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd). However, voir dire questions or hypotheticals that misstate the law are improper. *See Middlebrook v. State*, 803 S.W.2d 355, 360 (Tex.App.-Fort Worth 1990, pet. ref'd); *Parker v. State*, 792 S.W.2d 795, 798–99 (Tex.App.-Houston [14th Dist.] 1990, pet. ref'd). We review the trial court's ruling on an objection to a hypothetical used in voir dire for abuse of discretion. *Id.* at 798.

■■ As a general rule, a witness may not recommend a particular punishment to the factfinder. *Johnson v. State*, 987 S.W.2d 79, 87 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd); *see Sattiewhite v. State*, 786 S.W.2d 271, 290 (Tex.Crim.App. 1989) (involving expert testimony). For this reason, the Corpus Christi court of appeals has concluded that a voir dire hypothetical implying that punishment recommendations are admissible is improper. *See Taylor v. State*, 74 S.W.3d 457, 463–64 (Tex.App.-Corpus Christi 2002, pet. granted) (holding trial court erred in overruling defendant's objection, on same ground as asserted here, to trial court's voir dire

hypothetical that was similarly worded to State's hypothetical here).

■ It does not appear that the State intended for this hypothetical to convey a false impression about the admissibility of punishment-recommendation testimony. Nonetheless, the voir dire panel could easily have inferred from the hypothetical that punishment-recommendation testimony was admissible during punishment. *See id.* To convey that impression would have been a misstatement of the law. Indeed, the risk of conveying that impression became greater when the trial court overruled appellant's objections, which effectively put the stamp of approval on the State's hypothetical. *See Lee v. State,* 971 S.W.2d 130, 131 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd). We thus hold that the court abused its discretion in overruling appellant's objections. *See Taylor,* 74 S.W.3d at 463–64.

■ However, we also hold that the error was harmless. A misstatement of law during voir dire requires reversal only if the misstatement harmed the appellant. *See Kelley v. State,* 845 S.W.2d 474, 479 (Tex.App.-Houston [1st Dist.] 1993, pet. ref'd). *Kelley* was decided before the Court of Criminal Appeals adopted the current harmless-error rule. *See id.* at 477, 479 (applying former rule of appellate procedure 81(b)(2)); *compare* Tex.R.App. P. 44.2(a) ("constitutional error"), 44.2(b) ("other error") (former rule 81(b)(2)'s successors). Since the new harmless-error rules went into effect, this Court has analyzed harm resulting from an erroneous ruling on a prosecutor's misstatement of the law during voir dire under rule 44.2(b). *See Glauser v. State,* 66 S.W.3d 307, 316 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd) (applying rule 44.2(b) to trial court's erroneous refusal to grant defendant's request, after appellant had objected to prosecutor's voir dire statement implying ap-

pellant had burden to produce evidence, to instruct venire panel that defendant had no such burden), *cert. denied,* 534 U.S. 1129, 122 S.Ct. 1068, 151 L.Ed.2d 971 (Feb. 19, 2002).

■ A constitutional error within the meaning of rule 44.2(a) is an error that directly offends the United States Constitution or the Texas Constitution, without regard to any statute or rule that might also apply. *Shelton v. State,* 41 S.W.3d 208, 218 (Tex.App.-Austin 2001, pet. ref'd); *Alford v. State,* 22 S.W.3d 669, 673 (Tex. App.-Fort Worth 2000, pet. ref'd); *Tate v. State,* 988 S.W.2d 887, 890 (Tex.App.-Austin 1999, pet. ref'd). That is, an error is constitutional only if the correct ruling was constitutionally required. *See Alford,* 22 S.W.3d at 673. We conclude that this error does not fit that definition. *See Glauser,* 66 S.W.3d at 316; *cf. Peak v. State,* 57 S.W.3d 14, 19 (Tex.App.-Houston [14th Dist.] 2001, no pet.) (holding misstatement of law in closing argument requires 44.2(b) harmless-error analysis); *Lee,* 971 S.W.2d at 131–32 (same); *cf. also Martinez v. State,* 17 S.W.3d 677, 692 (Tex. Crim.App.2000) ("[*Mosley v. State,* 983 S.W.2d 249, 259 (Tex.Crim.App.1998)]'s holding *suggests that most comments that fall outside the areas of permissible argument will be considered to be error of the nonconstitutional variety.* Comments upon matters outside the record … do not appear to raise *any unique concerns* that would require us to assign constitutional status.") (emphasis added). Appellant points to no constitutional provision that would have directly required the trial court to sustain an objection to the State's misstatement of the law.

■ We follow *Glauser* to hold that the trial court's overruling appellant's objections to the State's misstatement of law was "other error" to be assessed under

rule 44.2(b).[4] *See id.,* 66 S.W.3d at 316. Accordingly, we disregard the error unless the appellant's substantial rights are affected. Tex.R.App. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State,* 953 S.W.2d 266, 271 (Tex. Crim.App.1997). After examining the whole record, we may not reverse if we are fairly assured that the error did not influence the jury or had but slight effect on it. *Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App.1998); *see* Tex.R.App. P. 44.2(b).

■■■ In *Taylor,* in which the court held that a very similar error was harmful under any harmless-error standard, we note that (1) defense counsel stated on the record that he would not offer any punishment evidence because of the trial court's erroneous hypothetical and (2) counsel made an offer of proof as to what punishment evidence he would have offered but for the erroneous hypothetical. *See id.,* 74 S.W.3d at 462, 467 n. 13. Here, in contrast, both appellant and his father testified at punishment. Although appellant did advise the trial court that he was not putting on mitigating evidence at punishment, the record shows that appellant did so for a reason unrelated to any erroneous impression the State's voir dire hypothetical might have created. Additionally, the State mentioned the hypothetical only twice and did so in a context indicating that the hypothetical's focus was to determine which venire members could not consider the minimum punishment. A later ruling may also have helped, however slightly, to dispel the false impression that appellant alleges the hypothetical could have created. During punishment, the State started to ask T.T., "If this jury were to decide to place your brother on probation...." Appellant objected generally before the jury, then approached the bench to raise the same grounds as he had raised in voir dire. The trial court required the State to rephrase the question. Although the jury did not hear the grounds for appellant's objection or the bench discussion itself, it did hear the State attempt, unsuccessfully, over appellant's objection, to ask the victim something about probation. Furthermore, nothing shows that the jury considered the State's voir dire misstatement in its deliberations. Finally, the circumstances of the offenses were particularly callous and violent, making it less likely that this one misstatement influenced the jury's punishment significantly.

Given these considerations, we are "fairly assured that the error did not influence the jury or had but slight effect on it." *Johnson,* 967 S.W.2d at 417; *see* Tex. R.App. P. 44.2(b).

We overrule issue one.

We affirm the judgment of the trial court.

The remaining portion of the opinion does not meet the criteria for publication and is ordered unpublished. *See* Tex. R.App. P. 47.

4. Former Judge Charles Baird, sitting by assignment on the Corpus Christi Court of Appeals, identified "four distinct lines of cases dealing with harm"—including cases applying rules 44.2(a) and 44.2(b)—that he believed could be applied to a voir dire error like the one of which appellant complains here. *See*

*Taylor v. State,* 74 S.W.3d 457, 464–68 (Tex. App.-Corpus Christi 2002, pet. filed). Because the *Taylor* court held the error was harmful under any of the four harmless-error tests, the court did not decide which test applied. *See id.* We now decide the issue.