**Affirmed and Opinion Filed December 15, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00914-CR
### No. 05-13-00915-CR

**ENRIQUE MUNOZ, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

### On Appeal from the Criminal District Court No. 4
### Dallas County, Texas
### Trial Court Cause No.'s F-1333134-K and F13-33106-K

## OPINION

Before Justices FitzGerald, Fillmore, and Stoddart
Opinion by Justice FitzGerald

Appellant pled guilty to aggravated robbery of a person sixty-five years of age or older and theft from an elderly person. After a punishment hearing, the jury assessed punishment at thirty years' imprisonment in the aggravated robbery case and two years' imprisonment, probated, in the theft case. Initially, the trial court did not orally pronounce the sentence in either case. We abated these cases and ordered the trial court to conduct a sentencing hearing for the sole purpose of orally pronouncing appellant's sentence. The trial court complied, and this appeal was reinstated. In four issues on appeal, appellant asserts the trial court abused its discretion in admitting certain photographs into evidence, his counsel was ineffective for failing to object to the admission of the photographs into evidence without a proper predicate, and the

trial court erred by denying a curative instruction and a mistrial. Concluding appellant's arguments are without merit, we affirm the trial court's judgment.

## BACKGROUND

Eighty-year-old Frances George is the theft victim. George lives alone. On January 5, 2013, George went to a Wal-Mart to shop. Appellant and Cecilia Cerda followed her home. When George got out of the car, her purse was dangling from her arm. Appellant and Cerda snatched the purse as George started to walk around the fence to her house. As George explained, suddenly "her purse was going down the alley." A neighbor saw a gray pickup "peel out" and called 911.

Officer Lee Bratcher responded to the call. As Bratcher spoke with George, George received a call about the possible fraudulent use of a credit card that had been in her purse. Bratcher took over the call and was told the cards were being used at a gas station in Irving. Another Irving police officer was dispatched to the gas station.

Lou Ann Sharp is the aggravated robbery victim. On January 5, 2013, she went grocery shopping at a Kroger store. When she returned home and was unloading groceries, her doorbell rang. Cerda was at the door and offered to sell Sharp cigarettes. Sharp declined. Sharp was still standing at the door when appellant appeared. He maneuvered his way past Sharp's glass door and pushed her to the floor. Then, appellant climbed on top of Sharp and began hitting her on the side of the head. Appellant yelled at Cerda to "hurry." Sharp lost count of the number of times appellant hit her. She told him he could have anything he wanted and begged him not to hurt her. While appellant beat Sharp, Cerda ransacked the bedrooms. Appellant and Cerda took all of Sharp's jewelry, including her late husband's pocket watch. At appellant's suggestion, they took the rings off of Sharp's hands. They jerked the earrings from her ears and ripped a diamond necklace from her neck. They took a diamond watch and a diamond bracelet from her wrists. The

pair left Sharp lying inside her front door, with the skin on her head peeled back, bleeding onto the carpet. She was able to lock the door and crawl to her lounge chair in the living room. She called her next-door neighbors, who rushed over. She also called her daughter, who rushed over with her husband and called 911 on the way.

Sharp suffered at least three broken bones in her face. She had a traumatic subconjunctival hemorrhage in her left eye.  She had a large bruise on her face. As a result, part of her face is still numb, and she may never recover feeling in that area. The attack also aggravated an existing heart problem, and it took Sharp eight weeks to recover. Sharp still suffers from headaches and can no longer wear her new set of dentures. She has mild post-traumatic stress disorder and has suffered bouts of fear since the attack. She is afraid to go out to the store or be around people.

Appellant and Cerda were apprehended and confessed. When he was interviewed by the police, appellant stated that he was not on drugs. He did not recall how many times he hit Sharp, but  guessed that it was "maybe two, three, I don't know."

Appellant pled guilty and punishment was tried to the jury. Appellant testified on his own behalf and stated that he began using drugs when he was fifteen. He said that he denied using drugs when he was interviewed by the police because "it would just make the problem bigger if I admitted it." He said that he stole George's purse so that he could continue using drugs.

According to appellant, he was in the truck "doing some lines of Chiva" when Cerda first approached Sharp. He described chiva as "almost the same as heroin," and stated that "[w]hen you use chiva, it's worse than if you were drunk. You have your eyes closed, and it's like you were doing things."

Appellant claimed Cerda suggested they rob Sharp in order to pay a woman who was demanding payment for drugs. At the conclusion of the punishment hearing, the jury assessed

punishment at thirty years' imprisonment in the aggravated robbery case and two years' imprisonment, probated, in the theft case.

## ANALYSIS

*Sentencing*

As a threshold matter, the State observed that we lacked jurisdiction over the appeal because sentence was not orally pronounced in appellant's presence. A criminal sentence is a prerequisite to appellate jurisdiction.[1] For an appellate court to have jurisdiction over a criminal appeal, the defendant must be sentenced as defined under the Texas Code of Criminal Procedure.[2] Specifically, the sentence must be pronounced in the defendant's presence.[3] The oral pronouncement is the appealable event, which is memorialized in a written judgment and sentence.[4] When no oral pronouncement is made, there is no sentence to appeal.[5]

The rules of appellate procedure prohibit our dismissing an appeal if the trial court's erroneous action or failure to act prevents the proper presentation of the case, and the trial court can correct its action or failure to act.[6] Therefore, we determined that a proper and efficient remedy in this case was abatement.[7]

Consequently, we abated these cases and ordered the trial court to conduct a sentencing hearing for the sole purpose of pronouncing the sentences in appellant's presence. The trial court

---

[1] *Casias v. State,* 503 S.W.2d 262, 265 (Tex. Crim. App. 1973).

[2] *Meachum v. State*, 273 S.W.3d 803, 806 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

[3] *See* TEX. CODE CRIM. PROC. ANN. art. 42.03 §1(a) (West 2011); *Ex parte Madding*, 70 S.W.3d 131, 135 (Tex. Crim. App. 2002).

[4] *Taylor v. State*, 131 S.W.3d 497, 500 (Tex. Crim. App. 2004).

[5] *Thompson v. State*, 108 S.W.3d 287, 290 (Tex. Crim. App. 2003).

[6] *See* TEX. R. APP. P. 44.4.

[7] *See Meachum*, 273 S.W.3d at 806. (concluding abatement and remand proper remedy to address jurisdictional issue); *Wagstaff v. State*, No. 09–06–00162CR, 2007 WL 2323945, at *3 (Tex. App.—Beaumont Aug.15, 2007, no pet.) (mem. op., not designated for publication) (concluding that abatement, not dismissal, was proper remedy under rule 44.4 where the appellate court lacked jurisdiction due to trial court's failure to pronounce sentence in defendant's presence); see also *Wilson v. State,* 264 S.W.3d 104, 108–09 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (concluding that although the court of appeals lacked jurisdiction due to the trial court's failure to certify defendant's right to appeal, abatement, not dismissal, was proper remedy).

complied with our order, and the record now reflects that the sentences were pronounced in appellant's presence. We have reinstated the appeal, and now consider the merits of appellant's arguments.

***Admission of Evidence***

In his first issue, appellant complains the trial court erred in admitting three close-up photographs of Sharp. Specifically, appellant complains the trial court should not have admitted Exhibit 21, a picture of Sharp at the hospital, Exhibit 24, a picture of Sharp's face, and Exhibit 25, a close-up picture of Sharp's hands. According to appellant, the probative value of the photographs was outweighed by the danger of unfair prejudice because the photographs were "cumulative and prejudicial" and the State did not "need" the photographs.

We review a trial court's decision to admit photographs under an abuse of discretion standard.[8] A trial court abuses its discretion if no reasonable view of the record could support its ruling.[9]

Evidence may be excluded under Texas Rule of Evidence 403 if its probative value is substantially outweighed by the danger of unfair prejudice.[10] But this rule also favors the admission of relevant evidence, and such evidence is presumed to be more probative than prejudicial.[11]

A court may consider many factors in determining whether the probative value of photographic evidence is outweighed by its prejudicial effect. "These factors include: the number of exhibits offered, their gruesomeness, their detail, their size, whether they are in color or black

---

[8] *Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007).

[9] *See Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012).

[10] *See* TEX. R. EVID. 403

[11] *See Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006).

and white, whether they are close-up, whether the body depicted is clothed or naked, the availability of other means of proof, and other circumstances unique to the individual case."[12] Appellant contends the only purpose for showing him exhibits 24 and 25 during cross-examination was to elicit an emotional response from him. Appellant claims the State did not need these two photographs because the medical records described Sharp's injuries and another photograph (exhibit 12) that showed Sharp in the ambulance had been previously admitted. We disagree.

Detective Mayorga testified that he visited Sharp in the hospital and had taken several photographs of her. Exhibit 21 depicted how Mayorga saw Sharp for the first time. The picture shows bruises around both of Sharp's eyes, a scratch or dried blood on her left cheek, and the subconjunctival hemorrhage in her left eye. Mayorga testified that he was "shocked at . . . the injuries."

Exhibit 24 is a close-up picture of the left side of Sharp's face showing a large contusion and more of the bruising around her left eye. Both exhibits 21 and 24 were taken at the hospital. Exhibit 25 is a close-up photograph of Sharp's hands that was taken in the ambulance. It shows her fingers, which were obscured in Exhibit 12. There is blood on her fingers and a scratch or laceration on her left ring finger.

Each photograph depicts a specific injury Sharp sustained. This was probative to the issue of punishment, where the jury was asked to consider a range of punishment for the aggravated robbery from five to ninety-nine years or life.[13] Exhibit 12 does not show some of the injuries that are shown in exhibits 21, 24, and 25. Moreover, appellant testified that he "only" hit Sharp

---

[12] *Williams v. State*, 301 S.W.3d 675, 690 (Tex. Crim. App. 2009).

[13] *See* TEX. PENAL CODE ANN. § 12.32(a) (West 2011).

one or two times. The photographs of her injuries are probative of the credibility of his testimony.

The record does not reflect whether the original photographs were in color or black and white. But the evidence did not take long to develop. After exhibit 21 was admitted, Mayorga testified that Sharp's condition, as depicted in the photograph, gave him "a little extra motivation to solve the crime." After exhibit 25 was admitted, it was never mentioned again. The State did refer to exhibit 24 during closing argument to remind the jury of the severity of Sharp's injuries and to refute appellant's claim that he could not have hit Sharp more than two times and had not "given it his all," but the reference to the photograph was brief.

Sharp was clothed or covered in all of the complained-of photographs. In addition, the photographs were not overly gruesome. While the photographs of Sharp's injuries may have been disturbing, they were no more disturbing than appellant's actions.

Weighing all of the relevant factors, we conclude the trial court did not abuse its discretion in admitting the photographs into evidence. Appellant's first issue is overruled.[14]

### Ineffective Assistance of Counsel

In his second issue, appellant complains his trial counsel was ineffective because he failed to object to the State's failure to lay a predicate for the admission of exhibits 24 and 25. During the State's cross-examination of appellant, the following occurred:

> **PROSECUTOR**: So an 18-year-old girl can force you to attack and assault an elderly woman?
>
> **APPELLANT**: No. She could not force me. It's the pressure that I had with her that led me to this.
>
> **PROSECUTOR**: Your Honor, may I approach?

---

[14]*See Shuffield v. State*, 189 S.W.3d 782, 787–88 (Tex. Crim. App. 2006) (concluding no abuse of discretion in admitting crime-scene photographs because they were probative of the crime scene and injuries received by the victim, they were necessary in developing the State's case, and they were not overly gruesome).

**THE COURT**: You may.

**PROSECUTOR**: Enrique, I'm going to show you what's been marked State's Exhibit 24 and No. 25 as well. And you know what that is, right?

**APPELLANT**: (No audible response.)

**PROSECUTOR**: Your Honor, I move to admit State's Exhibit 24 and 25 into evidence.

**DEFENSE**: Same objection, 24, Judge. It's repetitive and the probative value is outweighed by the inflammatory impact.

**THE COURT**: May I see them? Overruled. They'll be admitted.

The test to determine the effectiveness of counsel requires appellant to show by a preponderance of the evidence that (1) counsel's representation fell below the standard of prevailing professional norms and (2) there is a reasonable probability that, but for these unprofessional errors, the outcome of the proceeding would have been different.[15] Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation.[16]

Direct appeal is usually an inadequate vehicle for raising an ineffective assistance of counsel claim because the record is generally undeveloped.[17] This statement is true with regard to the deficient performance prong of the inquiry when counsel's reasons for failing to do something do not appear in the record.[18] It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record.[19]

Although appellant filed a one paragraph motion for a new trial, there is no record of a hearing on the motion. When there is no proper evidentiary hearing on a motion for new trial, it

---

[15] *Strickland v. Washington,* 466 U.S. 668, 687–89 (1984); *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012).

[16] *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).

[17] *Menefield*, 363 S.W.3d at 592–93; *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

[18] *Menefield*, 363 S.W.3d at 593; *Thompson*, 9 S.W.3d at 813.

[19] *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

is extremely difficult to show counsel's performance was deficient.[20] The court of criminal appeals has stated that it should be a rare case in which an appellate court finds ineffective assistance on a record that is silent as to counsel's trial strategy.[21] When faced with such a silent record, we "should not find deficient performance unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'"[22] We do not speculate on what counsel's strategy may have been with regard to the alleged error.[23]

Here, the record is silent as to counsel's strategy for not objecting to the State's failure to lay an evidentiary predicate. Therefore, on the record before us, we cannot conclude that counsel's failure to object "was so outrageous that no competent attorney" would have declined to object. Without more, we must presume counsel acted pursuant to a reasonable trial strategy. Appellant's second issue is overruled.

### *Jury Instruction and Mistrial*

In his third and fourth issues, appellant asserts the trial court erred in refusing his request for a curative instruction and a mistrial.

During the State's cross-examination of appellant during the punishment phase, the State challenged the inconsistencies in appellant's trial testimony and the statements he made to the police. In so doing, the following exchange occurred:

> **PROSECUTOR**: And you told the detective then you didn't have a drug problem?
>
> **APPELLANT**: Exactly, I did tell him that.

---

[20] *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

[21] *See Andrews v. State*, 159 S.W.3d 98, 103 (Tex. Crim. App. 2005).

[22] *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

[23] *Scott v. State*, 392 S.W.3d 684, 687 (Tex. App.—Dallas 2010, no pet.).

**PROSECUTOR**: And, in fact, [Cerda] also told the detective the same thing, didn't she? . . .

**APPELLANT**: I don't know what [Cerda] may have told them.

**PROSECUTOR**: [Cerda] couldn't even come in here and testify that you have a drug problem, could she?

**DEFENSE**: Judge, objection. That's her right to remain silent.

**THE COURT**: Ask it a different way.

**DEFENSE**: What's that, Judge?

**THE COURT**: Sustained. Ask the question a different way, please.

**DEFENSE**: We ask the jury to be instructed to disregard.

**THE COURT**: The jury has heard the evidence.

**DEFENSE**: And move for a mistrial, Judge.

**THE COURT**: Denied.

Error occurs when a court sustains an objection but fails to give the requested instruction to disregard.[24] This error does not rise to the level of constitutional error and, as a result, we must disregard it if it did not affect appellant's substantial rights.[25] "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict."[26]

Appellant asserts the denial of a curative instruction was error because "the State attempted to impugn [his] credibility by asserting that a non-testifying witness would not corroborate [his] testimony." But appellant does not explain how this question, to which there was no response, harmed his substantial rights.

---

[24] *Moreno v. State*, 821 S.W.2d 344, 354 (Tex. App.—Waco 1991, pet. ref'd).

[25] *See* TEX. R. APP. P. 44.2(b); *Thompson v. State,* 95 S.W.3d 537, 542 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

[26] *Scales v. State*, 380 S.W.3d 780, 786 (Tex. Crim. App. 2012).

The crux of appellant's argument is premised on the trial court's denial of his motion for a mistrial. In reviewing a trial court's ruling on a motion for mistrial, we must determine whether the trial court abused its discretion.[27] A trial court abuses its discretion if its decision was outside the zone of reasonable disagreement.[28] "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required."[29] And although we do not conduct a Rule 44.2(a) analysis,[30] "'whether a mistrial should have been granted involves balancing most, if not all, of the same considerations that attend a harm analysis.'" These factors include: (1) the severity of the misconduct, i.e., the magnitude of the prejudicial effect of the prosecutor's remarks; (2) the measures adopted to cure the misconduct, i.e., the efficacy of any cautionary instruction by the judge; and (3) the certainty of conviction absent the misconduct, i.e., the strength of the evidence supporting the conviction.[31]

"A mistrial is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile."[32] It is appropriate only for "a narrow class of highly prejudicial and incurable errors."[33] Therefore, a trial court properly exercises its discretion to declare a mistrial when, due to the error, "an impartial verdict cannot

---

[27] *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007).

[28] *Id.*

[29] *Id.*

[30] Whether a failure to grant a motion for mistrial requires a harm analysis was specifically addressed by the court of criminal appeals in *Archie*. In that case, the court held that a harm analysis is employed only when there is error, and ordinarily, error occurs only when the trial court makes a mistake. If the trial court sustains a defense objection and instructs the jury to disregard, the only adverse ruling, i.e., the only occasion for making a mistake, was the denial of the motion for mistrial. *Archie*, 221 S.W.3d at 699. Accordingly, the only issue "is whether the refusal to grant the mistrial was an abuse of discretion . . . ." *Id.* at 700.

[31] *Id.* (citing *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998)).

[32] *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000).

[33] *Id.*; *see also Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).

be reached" or a conviction would have to be reversed on appeal due to "an obvious procedural error."[34]

There is no prejudicial or otherwise incurable error here. The question was posed during cross-examination when appellant was testifying for the first time that he had a drug problem. This testimony not only contradicted what he told the police, but also contradicted the testimony of the detective who testified without objection that Cerda told him appellant did not have a drug problem. There was no response to the question.

After the judge sustained appellant's objection to the question, the prosecutor moved to another line of inquiry.

Significantly, the complained-of question was posed during the punishment phase of trial. Appellant had already pled guilty and the jury found him guilty based upon his plea. Thus, the question had no effect on the jury's determination of guilt or innocence. In terms of punishment, the punishment range for aggravated robbery is five to ninety-nine years or life.[35] The jury assessed punishment at thirty years' imprisonment—well below the maximum sentence. Therefore, it does not appear that the question inflamed the jury, or that any impression the question may have created was impossible to overcome. Under these circumstances, the trial court did not err in denying appellant's request for a mistrial. Appellant's third and fourth issues are overruled. The trial court's judgments are affirmed.


Do Not Publish
TEX. R. APP. P.47
130914F.U05

/Kerry P. FitzGerald/
_____
KERRY P. FITZGERALD
JUSTICE

---

[34] *Wood*, 18 S.W.3d at 648.

[35] TEX. PENAL CODE ANN. §12.32(a).



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ENRIQUE MUNOZ, Appellant

No. 05-13-00914-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 4, Dallas County, Texas
Trial Court Cause No. F-1333134-K.
Opinion delivered by Justice FitzGerald.
Justices Fillmore and Stoddart participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered December 15, 2014.



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

ENRIQUE MUNOZ, Appellant

No. 05-13-00915-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 4, Dallas County, Texas
Trial Court Cause No. F13-33106-K.
Opinion delivered by Justice FitzGerald.
Justices Fillmore and Stoddart participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered December 15, 2014.