**Dawn Kuretsch STEWART, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–02–00314–CR.**

Court of Appeals of Texas,
San Antonio.

Feb. 9, 2005.

Rehearing Overruled March 8, 2005.

Stephanie L. Stevens, Placido G. Gomez, Adriaan Jansse, Maria Ross Phelicia Kossie, Mark Stevens, San Antonio, for appellant.

Kevin P. Yeary, Asst. Criminal Dist. Atty., San Antonio, for appellee.

Sitting: CATHERINE STONE, Justice, PAUL W. GREEN, Justice,[1] SANDEE BRYAN MARION, Justice.

## OPINION

Opinion by CATHERINE STONE, Justice.

This appeal is on remand from the court of criminal appeals. Dawn Stewart appeals her conviction for driving while intoxicated. We originally reversed the trial court's judgment, concluding that the results of Stewart's intoxilyzer breath tests were irrelevant without retrograde extrapolation testimony and constituted no evidence to show Stewart was intoxicated when she drove. *Stewart v. State*, 103 S.W.3d 483, 486 (Tex.App.-San Antonio 2003), *rev'd*, 129 S.W.3d 93 (Tex.Crim.App. 2004). We further concluded that by admitting the breath test results, the trial

---

1. Not participating.

court encouraged the jury to conduct its own retrograde extrapolation and to decide the case on facts not in evidence. *Id.* Lastly, we concluded that the admission of the breath test results without retrograde extrapolation affected Stewart's substantial rights. *Id.*

The court of criminal appeals, however, reversed our judgment. *Stewart v. State,* 129 S.W.3d 93, 98 (Tex.Crim.App.2004). The court of criminal appeals held that breath test evidence may be relevant without retrograde extrapolation evidence. *Id.* at 96. The court further held that we erred in holding that the breath tests constituted no evidence to show Stewart was intoxicated when she drove. *Id.* Lastly, the court disagreed with our holding that the admission of the breath test results encouraged the jury to engage in its own crude retrograde extrapolation. *Id.* at 97. Consequently, the court remanded the cause to this court to address Stewart's remaining appellate issues: (1) whether the admission of Stewart's breath test results without retrograde extrapolation testimony violated Texas Rule of Evidence 403; (2) whether the admission of Stewart's breath test results confused the jury and led it to an erroneous conclusion; (3) whether the trial court erred by denying her request for an instruction on the presumption of innocence; (4) whether the trial court erred by allowing the State to make a misstatement of the law during voir dire; (5) whether the trial court erred by denying her requested instruction on the law of intoxication; and (6) whether the trial court erred by denying her challenge for cause to one of the members of the venire. After considering Stewart's complaints, we are of the opinion that the judgment of the trial court should be affirmed.

### TEXAS RULE OF EVIDENCE 403

▪ In her first issue, Stewart argues that the admission of her breath test re-

sults without retrograde extrapolation testimony violates Texas Rule of Evidence 403. When a defendant challenges the admissibility of evidence on Rule 403 grounds during trial, we review the court's ruling under an abuse of discretion standard. *State v. Mechler,* 153 S.W.3d 435, 440 (Tex.Crim.App., 2005). A trial court abuses its discretion when it acts arbitrarily or unreasonably. *Id.* We will not disturb the trial court's ruling unless the ruling falls outside the zone of reasonable disagreement. *Id.*

▪ Under Rule 403, all relevant evidence is admissible unless "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX.R. EVID. 403. Rule 403 carries with it the presumption that relevant evidence will be more probative than prejudicial. *Hayes v. State,* 85 S.W.3d 809, 815 (Tex. Crim.App.2002). Thus, there must be a "clear disparity between the degree of prejudice of the offered evidence and its probative value" before the Rule 403 balancing test requires exclusion. *Mozon v. State,* 991 S.W.2d 841, 847 (Tex.Crim.App. 1999).

▪ We assess four nonexclusive factors when determining whether the probative value of evidence is substantially outweighed by the danger of unfair prejudice. *Mechler,* at 440; *Manning v. State,* 114 S.W.3d 922, 926 (Tex.Crim.App.2003). These factors include: (1) "how compellingly the evidence serves to make a fact of consequence more or less probable"; (2) the potential the evidence has to impress the jury in some irrational but nevertheless indelible way; (3) "the time the proponent will need to develop the evidence,

during which the jury will be distracted from consideration of the indicted offense"; and (4) "the force of the proponent's need for this evidence to prove a fact of consequence, *i.e.*, does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute." *Mechler*, at 440–441; *Manning*, 114 S.W.3d at 926.

### Probative Value

"The first factor looks to the evidence's probativeness or how compelling the evidence serves to make a fact of consequence more or less probable." *Mechler*, at 440. In this case, Stewart submitted two breath test samples approximately eighty minutes after she stopped driving. Those samples showed a BAC level of 0.160 and 0.154. Stewart's breath test results indicate that Stewart had consumed alcohol. "As a result, they tend to make it more probable that [s]he was intoxicated at the time of driving under both the per se and impairment definitions of intoxication." *Id.* In fact, because both of Stewart's samples were significantly above the legal blood-alcohol limit of 0.10 less than an hour and a half after she stopped driving, we believe there is a relatively strong inference that she had a BAC level at or above 0.10 at the time of driving.[2]

### Irrational Impression

"The second factor asks whether the evidence has a potential to impress the jury in some irrational but indelible way." *Id.* at 441. Rule 403 does not exclude all prejudicial evidence; rather, it focuses only on the danger of "unfair" prejudice. *Id.* "Unfair prejudice" pertains "only to relevant evidence's tendency to tempt the

jury into finding guilt on grounds apart from proof of the offense charged." *Id.*

Here, the breath test results are undeniably prejudicial to Stewart; however, they are not unfairly prejudicial because such evidence relates directly to the charged offense. *See id.* Thus, Stewart's breath test results could not have impressed the jury in an irrational way. *See id.*

### Time to Develop

The third factor concerns "the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense." *Id.* As previously discussed, breath test results relate directly to the offense of driving while intoxicated. Because the breath test evidence relates directly to the charged offense, the jury could not have been distracted away from the charged offense regardless of the time the State devoted to presenting the evidence. *See id.*

### Need for the Evidence

The fourth factor asks how much the proponent "needs" the evidence to prove a fact of consequence. *Id.* at 441. This last factor encompasses the issue of whether the proponent has other evidence establishing the fact of consequence. *Id.* It also encompasses the issue of whether this fact is related to a disputed issue. *Id.*

At trial, Stewart's arresting officer, J. Rodriguez, testified he observed Stewart weaving in her lane on the night in question. When she was stopped, Stewart had red, glassy eyes and had alcohol on her breath. The record also indicates that Stewart admitted to having drunk a couple of beers and stated during the perform-

---

**2.** *See id.* at 449 (Cochran, J., concurring with four judges joining). It is undisputed that Stewart's offense was committed before the Penal Code was amended to lower the legal blood-alcohol limit from 0.10 to 0.08.

ance of her field sobriety tests that she "couldn't do [the field sobriety tests] sober." Officer Rodriguez stated that Stewart failed three field sobriety tests.

The jury, however, also heard that Stewart passed four other field sobriety tests. In addition, the jury heard that Stewart performed her field sobriety tests under relatively poor conditions; the night was windy and large trucks were driving past Stewart on the roadway. The jury further heard Stewart's arresting officer had no opinion one way or the other regarding whether Stewart had the normal use of her mental faculties. Under the circumstances, we believe the State had a need for Stewart's breath test results to prove Stewart's intoxication. *See Montgomery v. State*, 810 S.W.2d 372, 390 (Tex.Crim. App.1990).

### *Application*

After evaluating all of the relevant factors, we believe the sum of the factors weigh in favor of admissibility. Thus, we hold the trial court did not err by admitting the breath test evidence in this instance. Stewart's first issue is overruled.

### CONFUSION & ERRONEOUS DEDUCTIONS

■ In her second issue, Stewart contends the admission of her breath test results "did not assist the jury to understand the evidence or determine a fact in issue" and "led only to confusion and erroneous deductions." As discussed above, Stewart's breath test results relate directly to the charged offense. Therefore, in the absence of evidence indicating jury confusion, we cannot conclude that the challenged evidence could have confused the jury or led the jury to an erroneous deduction. Stewart's second issue is overruled.

### INSTRUCTION ON THE PRESUMPTION OF INNOCENCE

■ In her third issue, Stewart argues the trial court erred by denying her request for an instruction on the presumption of innocence.[3] When reviewing charge errors, an appellate court must undertake a two-step review: first, the court must determine whether error actually exists in the charge; second, if the court finds error, it must determine whether sufficient harm resulted from the error to require reversal. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984). The standard to determine whether sufficient harm resulted from the charging error to require reversal depends upon whether the appellant objected at trial. *Id.* When there has been a timely objection made at trial, an appellate court will reverse only if "the error is not harmless." *Id.*

■ There is no constitutional requirement that an instruction on the presumption of innocence be given in every criminal trial. *Kentucky v. Whorton*, 441 U.S. 786, 789, 99 S.Ct. 2088, 60 L.Ed.2d 640 (1979). Therefore, a trial court's failure to give an instruction on the presump-

---

**3.** At trial, Stewart's counsel asked for "Defendant's Special Requested Jury Instruction Number Three":

All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that a person has been arrested, confined, or otherwise indicted for, or otherwise charged with the offense gives rise to no inference of guilt at his trial. The law does not require a defendant to prove his innocence or produce any evidence at all. The presumption of innocence alone is sufficient to acquit the defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence.

tion of innocence "must be evaluated in light of the totality of the circumstances— including all the instructions to the jury, the arguments of counsel, whether the weight of the evidence was overwhelming, and other relevant factors—to determine whether the defendant received a constitutionally fair trial." *Id.; see also Hernandez v. State,* 107 S.W.3d 41, 45 (Tex.App.-San Antonio 2003, pet. ref'd).

In this case, the totality of the circumstances indicate that the trial court did not err by denying Stewart's requested instruction on the presumption of innocence. Although the jury charge did not include a specific instruction on the presumption of innocence, it did include an instruction that the jury could find Stewart guilty only if they believed the evidence beyond a reasonable doubt. The jury charge also contained language that the jury could not consider Stewart's choice to not testify or consider any evidence not introduced at trial. Lastly, the charge instructed the jury that because the jurors are not witnesses, they should not relate to other jurors their own experience or knowledge.

During closing arguments, the State told the jury that it had the burden of proving the elements of the offense beyond a reasonable doubt. Defense counsel also told the jury that the burden of proof rested with the State and that the State had to prove the alleged offense beyond a reasonable doubt. Defense Counsel further reminded the jury "that the purpose of presuming somebody innocent and requiring the State to prove [the offense] beyond a

reasonable doubt is to make sure that we don't convict an innocent person."

The weight of the evidence at trial was such that the jury could have found Stewart guilty of driving while intoxicated. During trial, the jury heard that Stewart was weaving in her lane as she drove down the roadway. When she was stopped, Stewart had red, glassy eyes and smelled of alcohol. According to the arresting officer, Stewart failed several field sobriety tests. Moreover, Stewart admitted to having drunk a couple of beers and stated she "couldn't do [the field sobriety tests] sober." Lastly, the jury heard that Stewart submitted two breath test samples approximately eighty minutes after she stopped driving. Those samples showed Stewart had a BAC level of 0.160 and 0.154, well above the legal blood-alcohol limit of 0.10.

During voir dire, the trial court explained to the jury that Stewart was presumed innocent until each and every element of the offense charged is proven beyond a reasonable doubt. The court told the jury, "[a]nd so right now even though that you know there is someone in the courtroom who has been charged with a criminal offense, if I ask every one of you to raise your hands and vote guilty or not guilty, at this point you would have to all raise your hand and vote not guilty because at this point the law presumes the person innocent." The State subsequently emphasized to the jury panel that it had the burden of proof and that it needed to prove all of its allegations beyond a reasonable doubt.[4] Defense counsel further

---

**4.** Stewart complains that the State made statements during voir dire that invited the jury to consider Stewart's status as a defendant as evidence tending to prove her guilt, which she claims is impermissible under *Taylor v. Kentucky,* 436 U.S. 478, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978). In *Taylor,* the prosecutor's closing argument described the beyond a reasonable doubt standard "by declar-

ing that petitioner, 'like every other defendant who's ever been tried who's in the penitentiary or in the reformatory today, has this presumption of innocence until proved guilty beyond a reasonable doubt.' " 436 U.S. at 486, 98 S.Ct. 1930. The court condemned the prosecution's argument because it linked the defendant to every defendant who turned out to be guilty and was sentenced to imprison-

told the venire panel that Stewart was innocent until proven guilty. Defense counsel also informed the venire that the burden of proof was on the State.

Looking at the totality of the circumstances, we hold the trial court did not err in refusing Stewart's requested instruction on the presumption of innocence. Stewart's third issue is overruled.

### MISSTATEMENTS OF THE LAW DURING VOIR DIRE

In her fourth issue, Stewart contends the trial court erred by allowing the State to mislead the venire concerning the definition of intoxication during jury selection. Specifically, Stewart argues that the State erroneously informed the jury that "the law allow[s] a finding of guilt if the jury f[inds] that at the time of testing, [Stewart] received a breath test score over .10." A trial court has wide discretion to control voir dire. *Allridge v. State*, 762 S.W.2d 146, 163 (Tex.Crim.App. 1988). The trial court's discretion is not limitless, however, and is reviewable for an abuse of discretion. *Id.* Stewart's complaint concerns the following excerpt from voir dire:

Prosecutor: The standard is a .10 for 1999. That is the first portion of the definition. The State has to prove the defendant had an alcohol concentration of .10 or more in her body.

ment. *Id.* at 486–87, 98 S.Ct. 1930. The court further stated that the prosecutor's statement could be viewed as an invitation to the jury to consider defendant's status as a defendant as evidence tending to prove his guilt. *Id.* at 487, 98 S.Ct. 1930.

Here, Stewart's complaint centers on the following remarks by the State:

With regard to the burden of proof, the State does have to prove each of these elements beyond a reasonable doubt ... Beyond a reasonable doubt does not mean beyond a shadow of a doubt. There is no definition in the law. Use your common

Another way that you can prove up intoxication is to prove that the defendant did not have the normal use of her mental faculties by reason of introduction of alcohol into her body. Or another way is that the defendant did not have the normal use of her physical faculties by reason of the introduction of alcohol into her body. So three different ways to prove intoxication. There are three different definitions. The State is required to prove this; however, the State is not required to prove all three of these, just one of them. Now, you can disagree. For example, if Yanity—

Prospective Juror No. 1: Yanity.

Prosecutor: I am so sorry. If you are one of the jurors who got picked on the panel, and you decided, Okay, she blew above .10. I think she's intoxicated.

Defense Counsel: Judge I'm going to object to that. I am going to object to that as a misstatement of the law. It is not whether they blew over. It's what their content was at the time they were driving.

The Court: Be overruled.

Prosecutor: So if the State proved all these elements beyond a reasonable doubt and proved they were intoxicat-

sense. It is a high burden. That is fine. That is the same burden used for traffic tickets all the way up to murders. *And the jails are full. There are a lot of people on probation.* Okay. (emphasis added).

Stewart contends the State's remarks in this case are similar to those of the prosecutor in *Taylor*. We are unpersuaded by Stewart's argument. Unlike *Taylor*, the State's remarks do not liken Stewart to "every other" previously convicted defendant; rather, they merely explain to the jury that the beyond the reasonable doubt standard is not an impossible burden to meet.

ed, and you believed that she blew above .10—

Defense Counsel: Again, Judge, that is a misstatement of the law, ... if she blew above .10.

The Court: Be overruled.

Prosecutor: And you decided, Okay, I don't think she blew above .10, but I thought she had los[t] her mental faculties, and then the rest of the four said, you know, I believe she blew above .10. It's okay if you disagree on the definition of intoxication, but if you all agree she is intoxicated, that is fine. Does that make sense? Is there anyone here who would require the State to prove all three definitions? Yes, ma'am. Tomlinson.

Prospective Juror No. 19: Yes, ma'am.

Prosecutor: Would you require the State to prove all three of these?

Prospective Juror No. 19: Yes, ma'am, before I could make a decision. I would want to make sure that it could be proved.

Prosecutor: So even if the State proved all these elements and just proved the first one, that the alcohol level was above .10—

Defense Counsel: Again, Judge, every time she says that, I am going to object because it's not the alcohol level was above .10. It was above .10 at the time she was driving.

The Court: Be overruled. Ladies and gentlemen, just. to make sure you don't get confused, I am going to give you the law that you need to apply to the facts of the case at that time.

In light of the nature of the State's argument, we are of the opinion that such argument would naturally be understood by the jury as a comment that the State need only prove that Stewart had a BAC greater than 0.10 at the time of testing to find her guilty of driving while intoxicated. We believe the State's argument constitutes a misstatement of the law because a person commits the offense of driving while intoxicated if the person had a BAC greater than 0.10 at the time of driving. *See* TEX. PENAL CODE ANN. § 49.04(a) (Vernon 2003) (stating a person commits the offense of driving while intoxicated if the person is intoxicated while operating a motor vehicle in a public place). Because we believe the State's argument constitutes a misstatement of law, we hold the trial court erred by overruling Stewart's objection to the State's argument. We must now determine whether Stewart was harmed by this error.

A misstatement of law during voir dire requires reversal only if appellant was harmed by the misstatement. *Thompson v. State,* 95 S.W.3d 537, 542 (Tex.App.-Houston [1st Dist.] 2002, no pet.). We analyze any harm arising from the prosecutor's voir dire statements under Texas Rule of Appellate Procedure 44.2(b). *Id.* We will disregard the error unless Stewart's substantial rights were affected, which occurs when the error had a "substantial and injurious effect or influence in determining the jury's verdict." TEX. R.APP. P. 44.2(b); *Thompson,* 95 S.W.3d at 543.

Here, we have a fair assurance that the error did not influence the jury. The record reveals that immediately after the State made the misstatements, the trial court instructed the jury that any law discussed during voir dire would be provided in the jury charge at the end of trial. When the State made its closing argument at the end of Stewart's trial, the trial court reminded the jury "the law is at the time of driving. Intoxication by one of three ways at the time of driving. That is the law." Lastly, the court's charge contained a correct statement of the relevant law.

The court's charge instructed the jury that it could find Stewart guilty only if it found she "was intoxicated, and while so intoxicated, did drive or operate a motor vehicle in a public place." Thus, we do not believe the State's misstatement during voir dire contributed to Stewart's conviction. Stewart's fourth issue is overruled.

### INSTRUCTION ON THE LAW OF INTOXICATION

 In her fifth issue, Stewart contends the trial court erred by refusing to instruct the jury that before it was proper to rely on results from the breath tests, the jury must believe beyond a reasonable doubt that the test results were reliable.[5] We disagree.

At trial, Stewart's counsel asked for "Defendant's Special Requested Jury Instruction Number One":

> Under our laws, a person is intoxicated if the state proves beyond a reasonable doubt that he has an alcohol concentration of .10 or more. If the state relies upon the .10 definition of intoxication, then proof thereof may be in the form of a chemical test showing the alcohol concentration in a defendant's body near the time of the offense if any was committed. However, conviction does not necessarily follow from the admission of chemical test results showing an alcohol concentration of .10 or more. First, the jury must be convinced beyond a reasonable doubt that the intoxilyzer machine is reliable and that the operator was

qualified, that is, that the chemical test provides trustworthy evidence of alcohol concentration in a defendant's breath. Second, the jury must be convinced beyond a reasonable doubt that an inference can be made from the results of the chemical test that the defendant had a .10 alcohol concentration in his body at the time he was driving and operating a motor vehicle in a public place.

> Therefore, if you find beyond a reasonable doubt that the chemical breath test results admitted into evidence in this case showed that Defendant, DAWN STEWART, had an alcohol concentration of .10 or more, you will wholly disregard such results unless you further find beyond a reasonable doubt that:

> 1) The intoxilyzer machine is reliable and the operator was qualified, that is, that the chemical test provides trustworthy evidence of alcohol concentration in a Defendant's breath; and,

> 2) An inference can be made from the results of the chemical test that the defendant had an alcohol concentration of .10 or more at the time he was driving and operating a motor vehicle in a public place.

Stewart cites *Forte v. State*, 707 S.W.2d 89 (Tex.Crim.App.1986), for the proposition that because the trial court failed to include the requested instruction, the charge of the court did not properly state the law. This court, however, has previously rejected this argument. *See Fernandez v. State*,

---

5. The trial court denied Stewart's requested instruction over her objection and charged the jury essentially verbatim from the statute. The charge of the court stated:

> "Intoxicated," means not having the normal use of mental or physical faculties by reason of the introduction of alcohol into the body or having an alcohol concentration of .10 or more ... Now, if you find from the evidence beyond a reasonable doubt that on or about the 4th day of April,

1999, in Bexar County, Texas, the defendant, DAWN STEWART, was intoxicated, and while so intoxicated, did drive or operate a motor vehicle in a public place, then you will find the defendant guilty as charged.

Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will find the defendant not guilty.

915 S.W.2d 572, 575–576 (Tex.App.-San Antonio 1996, no writ). Thus, we cannot say the trial court erred by refusing Stewart's special requested instruction. *See id.* Stewart's fifth issue is overruled.

## CHALLENGE FOR CAUSE

In her sixth issue, Stewart complains about the trial court's failure to grant her challenge for cause to veniremember Renteria. A defendant may challenge any prospective juror who has a bias or prejudice against some phase of the law upon which she is entitled to rely. TEX. CODE CRIM. PROC. ANN. art. 35.16(c)(2) (Vernon Supp.2004–2005). To preserve error on denied challenges for cause, the appellant must demonstrate on the record that: (1) she asserted a clear and specific challenge for cause; (2) she used a peremptory challenge on the complained of venire member; (3) all of her peremptory challenges were exhausted; (4) her request for additional strikes was denied; and (5) an objectionable juror sat on the jury. *Feldman v. State,* 71 S.W.3d 738, 744 (Tex. Crim.App.2002). The record in this case reflects that Stewart exhausted all of her peremptory challenges, and then requested, but was denied, further challenges. After Stewart's request for an additional peremptory strike was denied, Stewart had to accept an objectionable juror, thereby preserving any error for review on appeal. *See id.*

The denial of a challenge for cause is within the discretion of the trial court and will not be overturned absent an abuse of that discretion. *Mooney v. State,* 817 S.W.2d 693, 701 (Tex.Crim.App.1991). An appellate court gives great deference to the trial court's decision because the trial court is able to consider important factors such as demeanor and tone of voice that do not come through when reviewing a cold record. *Feldman,* 71 S.W.3d at 744.

"Particular deference is given when the potential juror's answers are vacillating, unclear, or contradictory." *Id.* We look at the entire record to determine if there is sufficient evidence to support the trial court's ruling when reviewing a trial court's decision to deny a challenge for cause. *Id.*

To determine if a prospective juror should be excused for cause due to a bias or prejudice against a phase of the law upon which the defendant is entitled to rely, "[t]he test is whether the bias or prejudice would substantially impair the prospective juror's ability to carry out his oath and instructions in accordance with the law." *Id.* The law must be explained to the prospective juror and the juror must be asked whether he can follow that law regardless of his personal views before the juror can be excused for cause on this basis. *Id.* The burden is on the proponent of a challenge for cause to establish her challenge is proper. *Id.* at 747.

During the voir dire examination of veniremember Renteria, the following exchange occurred between defense counsel and Renteria:

Q: My question, Mr. Renteria, would be—I don't know if I asked you this way or not. If there was evidence of a video, would that be something that you could consider or would you just go based on the test results?

A: If the test results were reliable then I would go with the test.

Q: Without considering any other evidence?

A: I would look at it. I would look at the video. But just like if the test results were not reliable and the video showed the person lost their ability to physically or mentally, I

would go with the video then. So it's more or less the reliability.

Q: Okay. But, basically, if you believed the video—if you believed the results were reliable, are you going to ignore the rest of the evidence in the case?

A: If I believe test results are reliable?

Q: Yes.

A: I would. I would look at that first section of the law since only one of those has to be proven.

Q: You wouldn't care about evidence as to any other—the other two?

A: Because to me the State would have proven their case.

Q: Okay. Okay. That is all the questions I have.

Stewart complains that the trial court should have granted her challenge for cause because Renteria "would not consider other evidence in the case beyond a breath test." Looking at the entirety of the voir dire, we cannot say the trial court abused its discretion by denying Stewart's challenge for cause. From Renteria's voir dire responses, it is evident that Renteria was not biased against non-breath test evidence. Rather, the record suggests that Renteria merely intended to exercise his discretion in weighing the different types of evidence presented. The record reveals that Renteria was open to considering evidence he believed to be reliable, whether the evidence was the results of a breathalyzer test or a video showing Stewart's intoxication level. At no point during voir dire did Renteria unequivocally state that he would consider only breath test evidence. Because the record does not indicate that Renteria exhibited a bias against the law, Stewart's sixth issue is overruled.

CONCLUSION

Having overruled all of Stewart's appellate issues, the judgment of the trial court is affirmed.