**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-21-00315-CR**
_____

**LIRIO MALDONADO JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 9th District Court**
**Montgomery County, Texas**
**Trial Cause No. 19-03-04088-CR**

**MEMORANDUM OPINION**

A grand jury indicted Appellant Lirio Maldonado Jr. for the murder of his girlfriend, C.B.[1] Maldonado pleaded guilty to the offense and elected to have a jury assess punishment. Maldonado argued he caused C.B.'s death under "sudden passion" and he requested and received a special issue on "sudden passion." Tex.

---

[1] We refer to the victim by her initials to conceal her identity. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

1

Penal Code Ann. § 19.02(d). The jury did not find "sudden passion."[2] The jury assessed Maldonado's punishment at life in prison. Maldonado appealed. In one appellate issue, Maldonado argues that the trial court, during voir dire, erred in allowing the prosecution to misstate the law on sudden passion over Maldonado's objection. We affirm the trial court's judgment.

## Evidence from Punishment Phase

On March 20, 2019, Maldonado's sister called 911, and law enforcement was dispatched to Maldonado's parents' residence in Willis, Texas, to do a welfare check. The caller indicated that someone had been murdered. When law enforcement arrived, Maldonado's two sisters were at the location along with two children, and Maldonado also arrived on the scene.

The conversation between Maldonado and law enforcement was video recorded, and the recording was admitted into evidence at trial and published to the jury. On the recording, Maldonado admitted to stabbing his pregnant girlfriend,

---

[2] In the Sudden Passion Issue, the jury was asked and responded as follows:

Do you find from the evidence that the defendant, LIRIO MALDONADO, JR., raised and proved by a preponderance of the evidence that he, LIRIO MALDONADO, JR., caused the death of [C.B.] under the immediate influence of sudden passion arising from an adequate cause?

_____We do.

\_\_\_\_X\_\_\_\_\_ We do not.

2

C.B., to death in the apartment after C.B. had told him the day before that she had been unfaithful with another man. An officer found C.B. in the master bedroom of the Conroe apartment she shared with Maldonado and their two children. C.B. was dead and had multiple stab wounds to her back, neck, abdomen, and arms.

When Maldonado was placed in handcuffs, law enforcement observed that Maldonado's pinky finger had been cut off, and Maldonado said it happened when he stabbed someone. Maldonado's pinky finger was recovered from underneath C.B.'s body. Maldonado was transported via ambulance to Conroe Regional Hospital, where he was treated for his severed finger, and then law enforcement took him into custody. Law enforcement described Maldonado's demeanor at the hospital as "very calm, overly calm, kind of cold[,]" and law enforcement obtained consent from him to search Maldonado's apartment and vehicle.

Photos of the crime scene and results from the DPS crime lab were also admitted into evidence. A DNA report of samples from the scene showed a combination of both Maldonado's and C.B.'s DNA. The forensic pathologist who performed C.B.'s autopsy testified that twenty-year-old C.B.'s cause of death was multiple stab wounds by homicide, and the forensic pathologist testified he remembered performing the autopsy because the approximately one hundred twenty stab wounds he observed on C.B. was "by far the most number of stab wounds that [he] had [observed] in a decade of practice." A video recording of Maldonado's

interview on March 20, 2019 was admitted into evidence and published to the jury, and at trial one investigator described Maldonado's demeanor as "calculated, cold[,] [and] [c]alm." According to testimony by law enforcement about Maldonado's statements during the interview, C.B. had informed Maldonado of her involvement with another man on the afternoon of March 19, Maldonado was upset and went to his parents' house and drank "to numb the pain[,]" came back to his apartment and ate, returned to his parents' residence to sleep, and then returned to his and C.B.'s apartment to reconcile on the morning of March 20. Maldonado laid down in the bed with C.B. and asked her that morning while she was attempting to sleep, "Do we get a chance?" C.B. answered "no" and refused to stop seeing the other man, and Maldonado went and retrieved a specific knife, pulled back the bed's covers, and stabbed her. When asked by law enforcement why he killed C.B., Maldonado responded that he wanted revenge.

Standard of Review and Applicable Law

At the punishment stage of a murder trial, "the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause." Tex. Penal Code Ann. § 19.02(d). "'Adequate cause' means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." Id. § 19.02(a)(1). "'[S]udden passion' means passion

4

directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." *Id.* § 19.02(a)(2). If the defendant proves the issue in the affirmative by a preponderance of the evidence, the murder offense is reduced from a first-degree felony to a second-degree felony. *Id.* § 19.02(d).

A trial court has wide discretion to control voir dire and the trial court's actions will be reviewed for abuse of discretion. *Allridge v. State*, 762 S.W.2d 146, 163 (Tex. Crim. App. 1988); *Stewart v. State*, 162 S.W.3d 269, 277 (Tex. App.—San Antonio 2005, pet. ref'd). A trial court abuses its discretion in prohibiting a proper question about a proper area of inquiry. *Fuller v. State*, 363 S.W.3d 583, 585 (Tex. Crim. App. 2012); *McAfee v. State*, 467 S.W.3d 622, 640 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd). Proper questions include seeking to discover a venire member's view on an issue applicable to trial, ones not repetitious, and ones not in improper form. *Fuller*, 363 S.W.3d at 586; *McAfee*, 467 S.W.3d at 640. However, a voir dire will require reversal when an appellant was harmed by the misstatement. *Stewart*, 162 S.W.3d at 278. We disregard the error unless the defendant's substantial rights were affected, or the error had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Stewart*, 162 S.W.3d at 278 (citing Tex. R. App. P. 44.2(b); *Thompson v. State*, 95 S.W.3d 537, 543 (Tex. App.—Houston [1st Dist.] 2002, no pet.)).

Analysis

On appeal, Maldonado argues that the trial court erred in allowing the prosecution to misstate the law on sudden passion during voir dire despite Maldonado's objection. During voir dire, the following exchange occurred:

[Prosecutor]: Okay. And so the circumstances surrounding what happened, right? That becomes important. And so we talked about immediate, so the length of time matters; the sudden part of it, right? So I'm going to talk about this, and I know it's small so I'm going to read it to you. Okay. So to get to sudden passion, there is preponderance of the evidence as to each section of this definition has to be met. Okay. Which means you have to be unanimous together, and that more likely than not each of these things is true. Okay. So the first thing is they have to cause the death under the immediate influence; that sudden part, right? And that they have to cause it under the immediate influence of passion. Okay. We already agreed most murders involve passion, right? So then it's like, okay, that passion, though, it has to be directly caused by the victim. Okay. It has to be directly caused by the victim. Okay. It has to stem from them. You can't be mad at someone else and go murder this person, right? So it has to be provoked by the victim at the same time of the murder, not before. Okay. So that immediate part. We have two pieces where it's immediate, right? Immediate influence of passion, immediately provoked another and not the result of former provocation. And then --

[Defense counsel]: Your Honor, I'm going to object. Can we approach?

[Prosecutor]: Sure.

(Bench conference on the record.)

THE COURT: Go ahead.

[Defense counsel]: Your Honor, it should not be solely the result of former provocation.

[Prosecutor]: What?

6

THE COURT: I think she's just working strictly off the statute.

[Defense counsel]: No, Your Honor. No, Your Honor. That's not solely the result of former prosecution.

THE COURT: Okay. Well, you certainly clarify your feeling during voir dire. That's overruled.

. . . .

[Defense counsel]: I place a lot of emphasis on that because that's a misstatement. I would object to the statement as presented, Your Honor. It's not solely the result of former provocation. That's the correct statement, Your Honor.

THE COURT: Okay. That's overruled.

(Bench conference ended.)

[Prosecutor]: Okay. So this language is directly from the statute. And so this the language that the jurors would get – the jury would get in the jury charge, right? So that passion has to be directly caused by the provocation of the victim. Okay. Just the victim, no one else, right, at the time of the offense. So at the time of the murder, the provocation was immediate and the passion rose to that level. Okay. Not prior provocation. Okay. So timing becomes important, fair?

After the prosecutor completed her voir dire on other issues, the trial court excused the jury panel for a break and the following exchange occurred on the record during a bench conference:

[Defense counsel]: The statute defined it as passion directly caused by and rising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation. That's the reading of the statute, Your Honor.

[Prosecutor]: There is no evidence that --

7

[Defense counsel]: So talking about the solely part.

[Prosecutor]: I said solely.

THE COURT: What's the statute number?

[Defense counsel]: 19.02, Your Honor.

THE COURT: All right. Well, I mean talk about it.

[Defense counsel]: It's the solely part, Your Honor, where it says --

THE COURT: Okay. You get the opportunity to voir dire, you know, the way you see fit about the law. And, you know, I will instruct the jurors as to the law when the time is appropriate to do so.

[Defense counsel]: Okay, Your Honor. I will argue that it was a misstatement.

THE COURT: I think you can say that in your interpretation of the statute.

[Defense counsel]: Yes, Your Honor, I'll do that.

During the State's closing argument, the prosecutor stated:

. . .You get this definition of sudden passion: Passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation. . . .

During defense counsel's closing argument, defense counsel gave the same definition of sudden passion. Also, the written jury charge instructed the jury as follows:

"Sudden passion" means passion directly caused by and arising out of provocation by the individual killed or another acting with the person

8

killed which passion arises at the time of the offense and is not solely the result of former provocation.

The language used by the trial court in the charge directly tracked the statute. *See* Tex. Penal Code Ann. § 19.02(a)(2).

Maldonado argues that every time the prosecutor mentioned "former provocation" during voir dire she omitted the words "and is not solely." According to Maldonado, because the trial court improperly overruled his objection, "the venire panel was tainted" and he was denied his Sixth Amendment right under the United States Constitution to a fair and impartial jury. Maldonado also contends that the denial of his Sixth Amendment right is a structural error requiring reversal, and that he is entitled to relief without any inquiry into harm.

Misstatements of the law made during voir dire examination requires reversal only if the appellant demonstrates harm under a non-constitutional error harm analysis. *See Brown v. State*, 468 S.W.3d 158, 166-67 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd); *Stewart*, 162 S.W.3d at 278; *Thompson*, 95 S.W.3d at 542-43; *see also* Tex. R. App. P. 44.2(b) ("[Non-constitutional errors] that [do] not affect substantial rights must be disregarded."). As stated above, that standard requires us to disregard the error unless it had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *See Thompson*, 95 S.W.3d at 543.

Assuming without deciding that the trial court erred by not sustaining Maldonado's objection, we reject Appellant's argument that the error had a

substantial or injurious effect or influence on the verdict, or that Maldonado's substantial rights were affected, as is required to demonstrate reversible error. *See* Tex. R. App. P. 44.2(b); *see also Stewart*, 162 S.W.3d at 277. Here, the record shows that defense counsel had the opportunity to examine the panel about "sudden passion" and to correct any misstatement as to definition of the phrase as stated in the statute. *See Penry v. State*, 903 S.W.2d 715, 741 (Tex. Crim. App. 1995) (considering defense counsel's opportunity to examine venire members in assessing harm from misstatement of law during voir dire). Further, the trial court properly defined "sudden passion" in the charge of the court and specifically noted in the voir dire that defense counsel could voir dire the jury panel "the way you see fit about the law." The judge explained to the attorneys that he would "instruct the jurors as to the law when the time is appropriate to do so." Further, in the charge that was given to the jury, the trial court stated, "You are the exclusive judges of the facts proved, of the credibility of the witnesses and the weight to be given their testimony, but you are bound to receive the law from the Court, which has been given you." Additionally, during closing arguments, both the prosecutor and defense counsel used the same definition of sudden passion that tracked the statutory language, included the language Maldonado alleged the prosecutor had omitted during voir dire, and the definitions used matched the instructions on "sudden passion" which were given by the trial court in the charge. At the close of the evidence, the trial

court's oral instructions as well as the written jury charge instructed the jury on the statutory definition of sudden passion. Maldonado does not challenge any part of the trial court's instructions to the jury. We presume the jury followed the court's instructions in the jury charge. *Crenshaw v. State*, 378 S.W.3d 460, 467 (Tex. Crim. App. 2012) (a jury is presumed to have understood and followed the court's charge, absent evidence to the contrary). Based on the record before us, we cannot say that the alleged misstatement of the law made during the voir dire of the trial had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *See Thompson*, 95 S.W.3d at 543. We overrule issue one and affirm the trial court's judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on June 23, 2022
Opinion Delivered July 27, 2022
Do Not Publish

Before Golemon, C.J., Horton and Johnson, JJ.

11