**Affirmed and Memorandum Opinion filed April 25, 2024.**



**In The**

# 𝔉𝔬𝔲𝔯𝔱𝔢𝔢𝔫𝔱𝔥 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

---

### NO. 14-22-00645-CR

---

**TANGIE BEATON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 3**
**Harris County, Texas**
**Trial Court Cause No. 2362010**

---

## MEMORANDUM OPINION

Appellant Tangie Beaton ("Beaton") appeals her conviction for driving while intoxicated, a class B misdemeanor. In two issues, appellant contends the trial court (1) should have excluded evidence of her blood test results because the affidavit in support of the search warrant for a specimen of her blood lacked probable cause; and (2) erred in admitting the blood test results because they are more prejudicial than probative. We affirm.

# I.  BACKGROUND

Beaton was involved in a two-car collision at 10:00 p.m. on June 5, 2021, in which she hit head-on an SUV sitting in the left-turn lane of NASA Parkway in Seabrook, Texas. Officer Gabriel Sanchez of the Seabrook Police Department responded and investigated the accident.

Officer Sanchez testified that he arrived at the accident scene at 10:09 p.m. and identified Beaton as the driver of the red pickup truck that had been in the accident. When he first interacted with Beaton, he saw her reach into the center console of her pickup truck for gum, which she began chewing. Sanchez testified that he had had conversations with Beaton in the past and was familiar with how she speaks. He testified while speaking with Beaton at the accident scene her speech was slow and slurred, she appeared disoriented, and he could smell the odor of alcohol emitting from her. He noticed that she was swaying while standing. During questioning, Beaton responded, "I can't remember," when asked where she was coming from, whether she had been driving, and whether she had had anything to drink. On the video from Officer Sanchez's body camera, which was admitted into evidence, Beaton could also be heard saying that there had been a wreck and she was unsure if she caused it.

Beaton had a gash on her leg from the wreck and was treated at the accident scene and transported to the hospital by EMS. Officer Sanchez followed the ambulance to the hospital, read *Miranda* and statutory warnings to Beaton, and performed the horizontal gaze nystagmus field sobriety test ("HGN test") on her while she sat in a hospital bed. Officer Sanchez counted six "clues," or signs of intoxication, during Beaton's performance of the HGN test. He testified that the involuntary jerking of her eyes during the HGN test indicated that Beaton no longer had control of her physical faculties.

Because Beaton refused to voluntarily give a sample of her blood, Officer Sanchez obtained a search warrant to draw Beaton's blood for analysis of its blood alcohol content ("BAC"). Beaton's blood was drawn at the hospital at 5:31 a.m. and 5:32 a.m., which was some seven and a half hours after the accident. Officer Sanchez testified that it regularly takes seven hours for the Seabrook Police Department to obtain a search warrant for a blood draw, stating, "This was a routine call."

Benny Rosales, a forensic scientist with the Texas Department of Public Safety Houston Crime Lab also testified. He tested Beaton's blood sample using gas chromatography to determine its BAC. The results of his testing showed that Beaton's sample had a BAC of 0.152 grams of alcohol per 100 milliliters of blood. Rosales confirmed that although this exceeded Texas's legal limit of 0.08, he could not testify that Beaton exceed the legal limit at the time she was driving. He further testified that it is "ordinary to have a time lapse between the time of the offense and the time of the blood draw," and the usual range of time would be three or four hours, but he had observed lapses as early as thirty minutes to over half a day. Still, Rosales conceded that it is important to perform the blood draw at or near the time of driving. He admitted that a seven-and-a-half-hour lapse "is pretty far."

Dana Schaub, who was driving the SUV involved in the accident with Beaton, also testified at trial. Her SUV was in the center turn lane of NASA Parkway, waiting to turn south into a restaurant parking lot. While waiting, Schaub saw Beaton's large red pickup swerve from the eastbound traffic lane into the center turn lane, causing the head on collision. Because the traffic was heavy, Schaub "had no place to go" to avoid the crash. Schaub testified that she could see Beaton in the driver's seat of the pickup, which did not have its headlights on.

The jury found appellant guilty, and the trial court assessed punishment at

180 days' confinement, probated for fifteen months of community supervision, and a $200 fine. This appeal followed.

## II. PROBABLE CAUSE

In her first issue, Beaton contends the trial court erroneously denied her motion to exclude evidence related to results of her blood test because the affidavit in support of the search warrant failed to establish probable cause. She argues further that the police officer who signed the affidavit did not prepare it, and the details in it were inconsistent with the police officer's testimony and offense report.

To preserve error for appellate review on evidentiary matters, the record must show that the party made a specific objection on the record unless it was apparent from the context and received an adverse ruling on that objection. *See* Tex. R. App. P. 33.1(a); Tex. R. Evid. 103(a); *Turner v. State*, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991); *Sanchez v. State*, 595 S.W.3d 331, 336 (Tex. App.— Houston [14th Dist.] 2020, no pet.). Thus, to address this issue on appeal, the trial court must have overruled Beaton's motion or objection about lack of probable cause for the search warrant.

At trial, when Officer Sanchez began testifying about the search warrant, Beaton's counsel initiated a *voir dire* examination of him. In an ensuing conference at the bench, the trial court asked whether Beaton's counsel intended "to go into facts that led to [Officer Sanchez] getting this warrant?" Beaton's counsel explained that because the search warrant was signed based on incorrect information, counsel intended to compare what Officer Sanchez wrote in his offense report to the facts stated in his affidavit and to the video footage from his body camera. Beaton's counsel further specified that he was objecting to relevance, foundation, and that the search warrant "was illegally obtained by incorrect

4

information" in the affidavit.

During this bench conference, the trial court noted that a hearing about the validity of the warrant needed to be held before the trial court, outside of the presence of the jury. Beaton's counsel thus stated that "[i]n that case, we would ask for a hearing on the validity of the warrant in front of the court if it's going to be a legal issue." Although the trial court overruled Beaton's previous objections to relevance and lack of foundation, the trial court did not conduct a hearing outside the presence of the jury and did not rule on Beaton's objection to the validity of the search warrant.[1] Further, there is no order in the record denying Beaton's pre-trial motion to suppress. Because there is no explicit or implicit ruling in the record, we conclude that Beaton's complaint about the validity of the search warrant has been waived. *See* Tex. R. App. P. 33.1(a).

### III.   RULE 403

In her second issue, Beaton argues that the trial court erred in overruling her objection to admission of the blood test results, which she argues were more prejudicial than probative due to the seven-and-a-half-hour lapse between her arrest and the testing of her blood, and the lack of retrograde extrapolation testimony.

### A.   Standard of Review & Applicable Law

A trial court's decision on the admissibility of evidence is reviewed for an abuse of discretion. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App.

---

[1] Nothing in the record, such as a docket entry or findings, indicates that the trial court implicitly ruled on Beaton's objection or refused to rule or to hold a hearing outside of the jury's presence. *See Sirls v. State*, 579 S.W.3d 651, 657 (Tex. App.—Houston [14th Dist.] 2019, no pet.)*; see, e.g., Moreno v. State*, 124 S.W.3d 339, 343 (Tex. App.—Corpus Christi-Edinburg 2003, no pet.) (concluding trial court implicitly ruled on motion to suppress by rendering findings of fact and conclusions of law).

2016). A trial court abuses its discretion when its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Id.* at 83. We may uphold a trial court's ruling on the admissibility of evidence if it was correct on any legal theory or basis applicable to the case. *Id.* at 93.

Under the Texas Rules of Evidence, relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Tex. R. Evid. 401. However, even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, considerations of undue delay, or needless presentation of cumulative evidence. Tex. R. Evid. 403.

"Rule 403 favors the admission of relevant evidence and caries a presumption that relevant evidence will be more probative than prejudicial." *Stone v. State*, 635 S.W.3d 763, 770 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd) (citing *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002)). A trial court may not exclude otherwise relevant evidence when that evidence is "merely prejudicial"—it must be unfairly prejudicial and substantially outweigh probative value. *Id*. Rule 403's limited scope is important because, "all evidence against a defendant is, by its very nature, designed to be prejudicial." *Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013).

Evidence is "unfairly" prejudicial if it tends to suggest an improper basis for reaching a decision. *Reese v. State*, 33 S.W.3d 238, 240 (Tex. Crim. App. 2000). A Rule 403 analysis balances the following four factors, though they are not exclusive: "(1) how probative the evidence is; (2) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way; (3) the time the proponent needs to develop the evidence; and (4) the proponent's need for the

evidence." *Colone v. State*, 573 S.W.3d 249, 266 (Tex. Crim. App. 2019); *Fortuna v. State*, 665 S.W.3d 861, 870 (Tex. App.—Houston [14th Dist.] 2023, no pet.). Whether evidence is admissible under Rule 403 is within the sound discretion of the trial court. *Burke v. State*, 371 S.W.3d 252, 257 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd). "In reviewing the trial court's balancing determination under Rule 403, we are to 'reverse the trial court's judgment rarely and only after a clear abuse of discretion.'" *Martinez v. State*, 468 S.W.3d 711, 718 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (quoting *Kappel v. State*, 402 S.W.3d 490, 494 (Tex. App.—Houston [14th Dist.] 2013, no pet.)).

## B. Analysis

Beaton argues that the blood test results are more prejudicial than probative because there was no other reliable evidence that would explain to the jury whether her BAC was above 0.08 at the time of driving. To obtain a conviction for driving while intoxicated, there must be evidence from which a jury could conclude that, at the time of driving, the defendant was intoxicated. *See Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). Intoxication is either loss of the normal use of mental or physical faculties by reason of the introduction of alcohol into one's body, or a BAC of 0.08 or more. *See* Tex. Penal Code Ann. § 49.01(2); *Kirsch v. State*, 306 S.W.3d 738, 743 (Tex. Crim. App. 2010) (discussing the impairment theory of intoxication and the per se theory of intoxication). Beaton reasons that if no blood test result had been admitted in evidence, then the jury would likely have found her not guilty.

In response, the State contends the results had a high probative value and the prosecution had a particularized need for the blood test results. We agree with the State. Here, the results of the blood test, although taken seven-and-a-half hours after her arrest, confirmed that Beaton had consumed alcohol. *See Gigliobianco v.*

*State*, 210 S.W.3d 637, 642 (Tex. Crim. App. 2006). Further, because the evidence does not show that Beaton consumed alcohol after the collision, the blood test results are evidence that she "had introduced alcohol into the body prior to the accident." *Kennemur v. State*, 280 S.W.3d 305, 315 (Tex. App.—Amarillo 2008, pet ref'd); *see Stewart v. State*, 162 S.W.3d 269, 274 (Tex. App.—San Antonio 2005, pet. ref'd) (addressing Rule 403 and concluding that breath test results absent retrograde extrapolation indicated appellant's consumption of alcohol and tended to make it more probable that she was intoxicated at the time of driving). And although Beaton argues that without retrograde extrapolation testimony, the blood test results are more prejudicial than probative, the Texas Court of Criminal Appeals has held that such test results make it more probable that a defendant was intoxicated at the time of driving, under both per se and impairment theories of intoxication, even without retrograde extrapolation testimony. *See State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005). This factor weighs in favor of admissibility. *Id.*

The Court of Criminal Appeals has addressed the second and third factors, the effect on the jury in some irrational but indelible way and the time the proponent needs to develop the evidence, in analogous cases. When addressing the effect on the jury in some irrational but indelible way, the court has concluded that intoxilyzer test results are "not unfairly prejudicial because this evidence relates directly to the charged offense." *Mechler*, 153 S.W.3d at 440–41. Nor do such test results "have a great potential to impress the jury in an irrational way." *Id.* at 441; *see Gigliobianco*, 210 S.W.3d at 642. As to the third factor, the time the proponent needs to develop the evidence, the court has concluded that regardless of the length of time spent presenting such evidence, it relates directly to the charged offense and would not distract the jury. *Mechler*, 153 S.W.3d at 441. Thus, we conclude

that the trial court could have reasonably found that these two factors weighed in favor of admission of the evidence. *See Gigliobianco*, 210 S.W.3d at 642.

Under the fourth factor, the State argues it had a need for the evidence to establish intoxication and refute a defensive theory. The evidence at trial included video from Officer Sanchez's body camera at the accident scene and at the hospital. In the video, Beaton appeared confused and responded with "I don't remember" to questions about the accident, such as "Where were you coming from?" and "Do you know if you were driving?" The video also shows Officer Sanchez performing the HGN test on Beaton in the hospital, and her performance showed multiple clues for intoxication. Beaton's defensive theory at trial included suggestion of alternate theories for impairment, such as a concussion or medications she received in the ambulance and possibly in an intravenous drip in the hospital. The blood test results showed that imbibing alcohol was an explanation for Beaton's demeanor, speech, and performance on the HGN test. Thus, the evidence was needed for the State to rebut Beaton's defensive theory. *See Knight v. State*, 457 S.W.3d 192, 204 (Tex. App.—El Paso 2015, pet. ref'd). Accordingly, we conclude that this factor also weighs in favor of admission of the blood test results.

Because the trial court could have reasonably determined that Beaton's blood test results were not unduly prejudicial and did not substantially outweigh their probative value, we conclude that the trial court did not abuse its discretion in admitting the blood test results. *See* Tex. Rule Evid. 403; *Gigliobianco*, 210 S.W.3d at 642–43. We overrule issue two.

## IV.   CONCLUSION

Having overruled Beaton's two issues, we affirm the trial court's judgment.

/s/ Margaret "Meg" Poissant
Justice

Panel consists of Justices Wise, Zimmerer, and Poissant.

Do Not Publish — TEX. R. APP. P. 47.2(b)